## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| BOBBY JACK COLLINS, individually, and LEISA COLLINS, as Independent Administrator of, and on behalf of, the ESTATE OF TONI JO COLLINS and her heirs-in-law,<br><br>　　　Plaintiffs,<br><br>v.<br><br>CITY OF GALVESTON, TEXAS; and EVAN SUMNER FRALEY,<br><br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____ |

### PLAINTIFFS' ORIGINAL COMPLAINT

> **Galveston Police Officer Evan Fraley, approximately 6'-8" tall and likely weighing 350-400 pounds, shot and killed Toni Collins, who was only approximately 5'-2" tall and weighed 144 pounds, in a Galveston alley. Toni Collins was not fleeing, had not been suspected of any serious crime, and did not possess a weapon. As one witness said, "It was unnecessary, uncalled-for, and unjustified."**



## Table of Contents

I.    Introductory Allegations .................................................................... 3

    A.    Parties ................................................................................... 3

    B.    Jurisdiction ........................................................................... 5

    C.    Venue ................................................................................... 5

II.   Factual Allegations .......................................................................... 6

    A.    Introduction .......................................................................... 6

    B.    Toni Jo Collins ..................................................................... 6

    C.    Toni Was No Threat to Officer Fraley ................................... 7

    D.    Officer Fraley Shoots and Kills Toni ..................................... 9

    E.    Autopsy Report ................................................................... 14

    F.    The City's Post-Death Reporting .......................................... 14

    G.    The Cover-Up: Refusal to Produce Records ........................... 15

    H.    Texas Commission on Law Enforcement Records ................... 16

    I.    Monell Liability .................................................................. 18

        1.   The City Ratified Officer Fraley's Actions ..................... 18

        2.   The City's Policies, Practices, and Customs Regarding Off-Duty Officers Were Moving Forces Behind and Caused Toni's Death ......................................................................... 19

        3.   The City's Failure to Appropriately Train and/or Supervise Officer Fraley was a Moving Force Behind and Caused Toni's Death ......................................................................... 21

III.  Causes of Action ............................................................................ 21

    A.    Cause of Action Against Evan Sumner Fraley Under 42 U.S.C. § 1983 for Violation of 4th and 14th Amendment Rights ............ 21

    B.    Cause of Action Against City of Galveston Under 42 U.S.C. § 1983 for Violation of 4th and 14th Amendment Rights ....................... 24

IV.   Concluding Allegations .................................................................... 27

    A.    Conditions Precedent ............................................................ 27

    B.    Use of Documents ............................................................... 27

    C.    Jury Demand ....................................................................... 27

    D.    Prayer ................................................................................. 27

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The Plaintiff files this complaint and for cause of action will show the following.

I.      Introductory Allegations

A.      Parties

1.      Plaintiff Bobby Jack Collins ("Mr. Collins") is a natural person who resides and did reside and was domiciled in Texas at all relevant times. Mr. Collins was Toni Jo Collins' legal and biological father. Toni Jo Collins is referred to herein at times as either "Toni" or "Ms. Collins." Mr. Collins asserts his individual claims.

2.      Plaintiff Leisa Collins is a natural person who resides and did reside and was domiciled in Texas at all relevant times. Leisa Collins brings claims in this lawsuit as the Independent Administrator of the Estate of Toni Jo Collins. Leisa Collins asserts any and all claims available in her capacity as the Independent Administrator regarding Toni's death, including all claims on behalf of the Estate and all of Toni's heirs-at-law including but not necessarily limited to Mr. Collins and Toni's siblings, Lona Pearl Collins and Bobby John Collins. Letters of independent administration were issued to Leisa Collins on or about June 27, 2018, in Cause Number 23442-CCL, in the County Court of Ector County, Texas, in a case styled *In the Estate of Toni Jo Collins, Deceased.*"

3.      Defendant City of Galveston, Texas ("Galveston" or the "City") is a Texas incorporated municipality / city. Galveston may be served with process pursuant to Federal Rule of Civil Procedure 4(j)(2) by serving its chief executive officer. The identity of Galveston's chief executive officer is determined by Galveston's decision to use the council-manager form of government. As a result, Galveston's chief executive officer is City Manager Brian Maxwell. City Manager Brian Maxwell may be served with process at City Hall, 823 Rosenberg, Suite 203,

Galveston, Texas 77550, or wherever he may be found. Galveston may also be served with process pursuant to Federal Rule of Civil Procedure 4(j)(2) by serving it in the manner prescribed by Texas State law for serving a summons or like process (a citation in Texas State courts) on such a Defendant. Texas Civil Practice and Remedies Code 17.024(b) reads, "In a suit against an incorporated city, town, or village, citation may be served on the mayor, clerk, secretary, or treasurer. Therefore, Galveston may also be served with process by serving its mayor, clerk, secretary, or treasurer wherever any such person may be found. Galveston acted or failed to act at all relevant times, in accordance with its customs, practices, and/or policies, through its policymakers, chief policymakers, employees, agents, representatives, and/or police officers and is liable for such actions and/or failure to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983).

4.     Defendant Evan Sumner Fraley ("Officer Fraley" or "Mr. Fraley") is a natural person who resides and is domiciled, and may be served with process, at 517 Carrington Street, Hutto, Texas 78634. Officer Fraley may also be served at his place of employment, Hutto Police Department, at 401 W. Front Street, Hutto, Texas 78634. Mr. Fraley may also be served with process wherever he may be found or, pursuant to Federal Rule of Civil Procedure 4(e), by leaving a copy of this complaint and a summons directed to Mr. Fraley at Mr. Fraley's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Mr. Fraley is being sued in his individual capacity and acted at all relevant times under color of state law. Mr. Fraley was employed by and/or was the agent and/or designee and/or contractor of and for Galveston at all such times and acted or failed to act in the course and scope of his duties for Galveston.

B.      Jurisdiction

5.      The court has original subject matter jurisdiction over this lawsuit according to 28 U.S.C. §§ 1331 and 1343(4), because this suit presents a federal question and seeks relief pursuant to federal statutes providing for the protection of civil rights.  This suit arises under the United States Constitution and a federal statute including but not necessarily limited to 42 U.S.C. § 1983. The Plaintiff does not, by including the following sentence, assert, stipulate to, or allege any state law claims.  However, to the extent any such claims are alleged or construed to be alleged in this pleading, the court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a) due to them being so related to the claims within the court's original jurisdiction that they and the claims within the court's original jurisdiction arise from a common nucleus of operative fact and form part of the same case or controversy under Article III of the United States Constitution.

6.      The court has personal jurisdiction over Galveston because it is a Texas municipality.  The court has personal jurisdiction over the natural person Defendant because he resides in, is domiciled in, and is a citizen of Texas.

C.      Venue

7.      Venue is proper in the Galveston Division of the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1391(b)(2), because it is the division in the district in which a substantial part of the events or omissions giving rise to claims asserted in this pleading occurred.

## II.   Factual Allegations

### A.   Introduction

8.     The Plaintiffs provide in the factual allegations sections below the general substance of certain factual allegations.  The Plaintiffs do not intend that those sections provide in detail, or necessarily in chronological order, any or all allegations.  Rather, the Plaintiffs intend that those sections provide the Defendants sufficient fair notice of the general nature and substance of the Plaintiffs' allegations, and further demonstrate that the Plaintiffs' claim(s) have facial plausibility.  Whenever the Plaintiffs plead factual allegations "upon information and belief," the Plaintiffs are pleading that the specified factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

### B.   Toni Jo Collins

9.     Toni, or "TJ" as she was called by many friends and family, was born in Odessa, Texas in 1980.  Toni's mother died in car accident when she was about 2 years old.  Toni was always very active as a child and loved to help her father in his mechanic's shop.  She had a little wooden work bench, and a little hammer, and was content to spend hours hammering pieces that fit into the workbench.  She preferred that kind of work to playing with dolls, and she was always very curious.

10.    As Toni grew older, she loved to swim.  Toni received her lifeguard certification and liked being in the water whenever possible.  Toni also loved camping and fishing and generally anything outdoors.  She liked drawing, painting, and writing, and she was an honor student in high school.  Toni worked from a young age, starting at her grandparents' drug store in downtown Odessa.  Toni worked the soda fountain at the Henderson-Collins Drugstore, as well as the grill.

She worked weekends in the summer months, and sometimes after school, for many years.  She would also work for her "Pops" in his construction business doing clerical work.

11.    Toni married her high school sweetheart, Clint, and they lived on the coast for several years while Clint worked on offshore production platforms.  Tragically, Toni's high school sweetheart was tragically murdered in Odessa in 2014.

### C.    Toni Was No Threat to Officer Fraley

12.    Toni was a very small woman.  She was only approximately 5'-2" tall, and her weight would vary somewhat between approximately between 115 pounds and, at the time of her death, approximately 144 pounds.  She was noticeably smaller than an average adult and appeared so small physically, to at least one witness near the time of her death, that she looked like a child.



**Toni – 5th from left – 5'2" tall**

13.      Officer Fraley, in stark contrast to Toni, is a very large man.  Upon information and belief, he is 6'-8" tall, and he weighed at the time of Toni's death between 350 and 400 pounds. Officer Fraley played college football for Eastern New Mexico University.  Officer Fraley was an offensive tackle and, during some college years, weighed approximately 315 to 320 pounds.  Upon information and belief, this was when he reached the peak of physical fitness, and he gained significant weight afterward.



**Officer Fraley – 2nd from left – 6'-8" tall, 350-400 pounds.**

14.      Officer Fraley also played football for four years at Montgomery High School. Upon information and belief, he likely played football even before then.  Regardless, Officer Fraley, for years, as a result of playing football, including related training, physical exertion, and workouts, knocked down men as large if not larger than him.  He played a sport – and a position – which prides itself on physical aggressiveness and the ability to slam large men to the ground.

Officer Fraley, through his experiences playing football, was well-aware of his physical superiority and ability to physically subdue someone his size, much less someone weighing less than 150 pounds.

15.     Aside from Officer Fraley's extensive football experience in literally physically knocking down men as large as himself, many times, over several years, he also received training through the police academy and continuing law enforcement education as to how to fight and subdue suspects.  Officer Fraley received particularized training related to fighting and taking down suspects – ensuring that people would not harm him in the process.  Thus, Toni, merely 5'-2" tall and weighing at most 144 pounds, was no physical match for Officer Fraley.  More important, due to her small physical presence, she was no threat at all to Officer Fraley.  Officer Fraley would not have had, and did not ever have, any fear that Toni could or would seriously harm him or anyone else.

### D.     Officer Fraley Shoots and Kills Toni

16.     Officer Fraley shot and killed Toni.  The shooting happened in the late afternoon on March 9, 2017 in Galveston, Texas.  It was, as one witness said, "Unnecessary, uncalled-for, and unjustified."

17.     Toni was in an alley with a man named Victor Mangum.  She was holding what was clearly a pink Daisy B.B. gun/air rifle.  Toni was not threatening Mr. Mangum or anyone else with the B.B. gun but instead simply holding it.  She had received it as a present, and she was proud of it.  Toni had no intent to shoot the B.B. gun at anyone, or harm anyone with it, and it was apparent from looking at her, considering the circumstances, that she was not a danger to anyone at the scene.  Toni was not pointing the B.B. gun at anyone or in the direction of anyone.

18.     Officer Fraley, somehow learning of Toni's presence, sped to the scene in his vehicle.  Upon information and belief, Officer Fraley had just finished eating at a restaurant.  He stopped his vehicle abruptly and was with one or more family members.  Officer Fraley, though off-duty, was acting in the course and scope of his duties as a City of Galveston police officer, under color of state law.

19.     Officer Fraley did not identify himself as a police officer.  Even so, he pulled his pistol and ordered Toni and Victor to lay on the ground.  Victor laid on the ground, but Toni held out the B.B. gun and said in substance, "It's a Daisy B.B. gun."  One witness indicated that it looked like an "air puff gun."  Toni did not hold the gun out in a manner indicating that she intended to use it, or shoot it at anyone, but instead simply to show officer Fraley that it was something about which he needed not be concerned.  She displayed it so that he could see that it did not present a threat.  Toni eventually dropped the B.B. gun as requested.  Even so, Officer Fraley threw her into a fence.  Officer Fraley then kicked the B.B. gun away.  Officer Fraley also pistol-whipped Toni in the face.

20.     One witness told another witness, "There's a crazy man in the alleyway with a gun." She was referring to Officer Fraley.  A witness heard Officer Fraley yelling in substance, "Do it! Do it! Do it! See if I care!"  The witness thought that Officer Fraley was going to "unload" on everyone at the scene.  Officer Fraley appeared to be aiming the gun at everyone, and the witness believed that he was not calm and was a possible threat to everyone in the area.  The witness yelled to some girls, "Get in the garage now!"  Someone yelled, "There is a crazy man out in – with a gun aiming it at everybody and not caring!"

21.     Someone called for emergency service and said in substance, "Please hurry up. Get somebody out here before he hurts someone and shoots her."  A gunshot rang out, and one or more

witnesses yelled in substance, "It's too late! He done shot her!"  A witness indicated that the neighborhood was pretty calm until Officer Fraley "waved his gun around like he did with no care or concern of alarm that was being created by him."  Upon information and belief, none of the witnesses knew that Officer Fraley was a police officer until after he had shot Toni.  Another officer, much later, told one of the witnesses, when the witness was asked to testify, "We're not – we're not all bad."  He was obviously referring to Officer Fraley's patently unreasonable killing of Toni.

22.     A witness indicated that Officer Fraley seemed very angry, but that his life was not in danger at any time.  The witness said:

> Uh, it was une- unnecessary provoking of the community, a tragic loss, uh, probably something that could have been prevented.  Um, and that is my – my professional thought on that is that it is something that could've been prevented if handled much more calmly.

23.     Another witness indicated that she did not hear Officer Fraley identify himself as a police officer, and that he was wearing shorts, a t-shirt, and flip flops.  Officer Fraley was not dressed as a police officer, and he did not look like one.  This led to the witness being significantly confused when another police officer arrived after the shooting and did not take Officer Fraley into custody.  Upon information and belief, it appeared to everyone at the scene that Officer Fraley was a criminal and not acting as a police officer.  He was not protecting the neighborhood, but rather causing danger and panic in it.  Officer Fraley had no fear that Toni could subdue him, hurt him, or hurt anyone else at the scene.

24.     Another witness saw what he perceived to be a Chevrolet Suburban, which Officer Fraley was driving, "flying" to the ally.  That witness had no idea who Officer Fraley was and assumed he was someone that knew Toni and/or Mr. Mangum.  The witness also saw Toni fly through the air when Officer Fraley grabbed Toni and threw her like a rag doll into a fence.  This

was a clear demonstration of Officer Fraley's physical superiority over Toni – and that there was no need to shoot and kill her.

25.     That witness told a 911 operator in substance, while Officer Fraley was waving his gun back and forth, "Y'all gotta get here.  Please.  Somebody – he is going to kill somebody.  Get here.  Please."  The witness said that, when officers arrived, they ran past Officer Fraley and "tackled the black guy."  The witness was referring to Mr. Mangum.  The witness was surprised, because he still did not know, after Officer Fraley had shot Toni, that Officer Fraley was a police officer.  The witness said to the arriving officers, "He's got the gun.  He's got the gun."  The witness then recognized an officer that he knew, and the officer said to the witness, "Do you want to give a statement?"  The witness said, "A statement?  The statement I am going to give you, you're not going to like it.  Because that cop just killed that lady."  The witness recalled the officer as being Officer Dominguez.  The witness understands that Officer Dominguez was promoted to detective at some point.

26.     Another witness, after Toni had dropped the B.B. gun, saw Officer Fraley pushing Toni with one hand while he had his pistol in the other hand.  The witness indicated that Officer Fraley never identified himself, and that she "just thought he was crazy."  The witness could hear Toni yelling, "Stop! Stop!"  Then she heard the gunshot.

27.     Another woman saw Officer Fraley pistol–whip Toni, before he shot her.  The witness saw him hit Toni in the head with his pistol.  That witness concluded her statement by saying, "My personal, ah, opinion is that it was unnecessary, uncalled for, and unjustified."  Every reasonable officer in Officer Fraley's shoes would agree.

28.     After police officers arrived on the scene, a police officer kicked Mr. Mangrum in his side.  While Mr. Mangrum is not a party to this case, he suffered abuse by that police officer.

That abuse was objectively unreasonable and a violation of Mr. Mangrum's constitutional rights, and it was engaged in by one of Officer Fraley's co-workers. This is shocking to say the least, when Mr. Mangrum was doing nothing wrong, and the officer's co-worker had just shot and killed a small woman without any justification whatsoever. At worst, it was simply confirmation of the custom and policy of the Galveston Police Department to exercise excessive force when dealing with residents.

29.     Toni did not, at the time she was shot, present a threat of serious bodily harm to Officer Fraley or anyone else at the scene. Toni was also not fleeing at the time. Further, Toni had not been accused of committing any serious crime, simply possessing a B.B. gun within the City limits. Toni had no violent or serious criminal history and, upon information and belief, no felony convictions. Officer Fraley's actions were patently unreasonable. According to Fifth Circuit precedent, and its clearly-established law, Officer Fraley was put on notice that shooting and killing Toni, under such circumstances, was a violation of clearly-established constitutional rights. Every reasonable police officer in officer Fraley's position would have known that his action viiolated such clearly-established constitutional rights.

30.     It was clearly established that a police officer should not shoot a firearm at a suspect not accused of a serious crime, not fleeing, and not presenting a significant risk of harm to the officer or anyone else at the scene. Officer Fraley could have easily physically subdued Toni, who was not holding a weapon at the time she was shot and killed, including but not limited to the innocuous air rifle. If Officer Fraley felt the need to physically subdue Toni, which would have been unreasonable in light of the situation, he could have easily done so with this bare hands. Instead, with the subjective intent to do exactly what he did, he shot and killed Toni. Officer Fraley acted in an unobjectively unreasonable manner and violated Toni's clearly-established

constitutional rights.  Thus, his actions resulted in, were producing causes of, and were proximate causes of Toni's death and all damages asserted and/or referenced in this pleading.

    E.    Autopsy Report

31.    The Galveston County Medical Examiner's office conducted an autopsy of Toni. The autopsy report, and the Medical Examiner's findings, indicate that Toni did not die instantly upon being shot.  Instead, upon information and belief, she experienced conscious pain and suffering.

32.    The autopsy report indicates that Toni suffered a perforated gunshot wound of her torso with entry in her left chest.  The report also indicates that Toni weighed 144 pounds, and was 5'-2" tall.  There was an abrasion on the left side of her forehead and contusions on her left upper back.

33.    The entry gunshot wound was 122 centimeters above Toni's left heel, 6 centimeters left of her anterior midline, and 6.5 centimeters from the left nipple in a ten o'clock direction. There was no soot, stippling, or muzzle imprint present.  The bullet entered the chest cavity through the sternum at the level of Rib Number 4.  The path of the bullet was from front to back – and downward.  Therefore, the exit gunshot wound was 11.5 centimeters lower than the entry gunshot wound, the bullet thus exiting only 108.5 centimeters above Toni's left heel.  The exit wound was also 4.5 centimeters left of Toni's posterior midline.  The autopsy report indicates that Toni died from a gunshot wound, and the manner of death was "homicide."

    F.    The City's Post-Death Reporting

34.    Chief Richard Boyle of the Galveston Police Department completed a custodial death report, as required by law, and it was transmitted to the Attorney General of Texas.  Chief

Boyle was less than candid and made the situation out to be one in which Officer Fraley was in fear of his life. The report did correctly list Toni's death as a "homicide." However, it falsely indicated that Toni would have been charged with an alleged offense of "aggravated assault with a deadly weapon." Toni did not commit that offense, and the allegation that she did was false.

35.     The report further painted a picture of something other than what actually happened. Chief Boyle wrote, "Officer was made aware of a situation involving a female subject with a long gun. Officer confronted the subject, who was in possession of what appeared to be a long gun." Officer Fraley knew he was unnecessarily confronting a woman with a B.B. gun, who was no threat to him, and who did not possess the B.B. gun at the time Officer Fraley chose to shoot and kill the woman. Chief Boyle writing that Officer Fraley was confronted by a woman with a "long gun" gives the false mental image that she possessed what the media has recently termed an "assault rifle." The false representations and illustrations in the report indicate Chief Boyle's approval of Officer Fraley shooting and killing Toni. This, due to Chief Boyle being the Defendants' chief policymaker regarding police matters, demonstrated the practice, custom, and policy of the City regarding shooting people such as Toni.

### G.     The Cover-Up: Refusal to Produce Records

36.     Upon information and belief, the City of Galveston has chosen to engage in a cover-up regarding documents and other records regarding the shooting. It failed to produce certain records, after indicating there would be a charge for such production. It then indicated to the Attorney General of Texas that the investigation regarding Toni's death was ongoing, and thus that the City did not need to produce any responsive records pursuant to the Public Information Act. The City did so well after a grand jury decided not to indict Officer Fraley for a criminal offense, which of course has no bearing on whether he violated Toni's constitutional rights.

Nevertheless, upon information and belief, the City has refused to produce all responsive documents and items because it knows that Toni's killing by Officer Fraley was unwarranted and without any legal or moral justification.

### H.   Texas Commission on Law Enforcement Records

37.   Upon information and belief, all of Officer Fraley's training related to being a police officer has been reported to the Texas Commission on Law Enforcement ("TCOLE"). According to TCOLE, Officer Fraley became a licensed peace officer in December 2013. Officer Fraley had been a licensed peace officer only a little over 3 years at the time he shot and killed Toni. Officer Fraley was not awarded the basic peace officer certification until after Toni's death. He also did not receive the intermediate peace officer certification until well after Toni's death – on March 20, 2018.

38.   Officer Fraley, in addition to all of the experience referenced above gained through football and law enforcement training regarding his ability to subdue large suspects, much less a 5'–2", approximately 140-pound woman, Officer Fraley received significant training related to the physical aspects of being a police officer. TCOLE records indicate that he received the following such training:

| Course No. | Course Title | Course Date | Course Hours | Institution |
|---|---|---|---|---|
| 3340 | Crowd Control | 12/16/16 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 10/21/16 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 10/20/16 | 24 | Houston Police Academy |
| 3340 | Crowd Control | 09/23/16 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 08/19/16 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 07/29/16 | 4 | Galveston Police Department (Training Rosters) |

| Course No. | Course Title | Course Date | Course Hours | Institution |
|---|---|---|---|---|
| 2055 | Firearms | 06/07/16 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 05/20/16 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 11/20/15 | 4 | Galveston Police Department (Training Rosters) |
| 2055 | Firearms | 11/11/15 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 10/30/15 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 09/23/15 | 24 | Houston Police Academy |
| 3340 | Crowd Control | 08/28/15 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 06/26/15 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 05/15/15 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 04/24/15 | 8 | Galveston Police Department (Training Rosters) |
| 3322 | Patrol Rifle | 01/31/15 | 16 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 01/23/15 | 8 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 01/17/15 | 40 | Houston Police Academy |
| 3340 | Crowd Control | 07/25/14 | 4 | Galveston Police Department (Training Rosters) |
| 3340 | Crowd Control | 05/30/14 | 4 | Galveston Police Department (Training Rosters) |
| 3722 | Peace Officer Field Training | 03/14/14 | 160 | Galveston Police Department (Training Rosters) |
| 3344 | Less Lethal Electronic Control Device Training | 01/03/14 | 8 | Galveston Police Department (Training Rosters) |
| 2053 | Baton (AI) | 12/30/13 | 8 | Galveston Police Department (Training Rosters) |
| 2055 | Firearms | 12/13/13 | 24 | Galveston Police Department (Training Rosters) |
| 1000643 | Basic Peace Officer Course (643) | 12/03/13 | 643 | College of the Mainland LEA |

Thus, Officer Fraley was well-trained and had significant life experience regarding subduing Toni with his bare hands.  He had demonstrated this by grabbing her and throwing her through the air, like a rag doll, into the fence, prior to deciding to shoot and kill her.

### I.        Monell Liability

39.     The City of Galveston is liable for all damages referenced in this pleading, including those suffered by Mr. Collins, the Estate of Toni Jo Collins, and Toni's heirs-at-law, pursuant to *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny.  Such liability arises due to the action and/or inaction of the chief policymaker for the City of Galveston and/or Galveston Police Department regarding material issues in this case.  The chief policymaker was the chief of police at all relevant times, or the chief policymaker for the City had delegated such chief policymaking authority, regarding police activities, to the chief of police.  The City's action and inaction otherwise referenced in this pleading, related to alleged damages, and its policies, practices, and/or customs, were moving forces behind, resulted in, were producing causes of, and were proximate causes of the referenced constitutional violations and damages.

### 1.        The City Ratified Officer Fraley's Actions

40.     The City has *Monell* liability due to, upon information and belief, its failure to sufficiently discipline Officer Fraley as a result of the unconstitutional seizure and use of force.  Upon information and belief, Officer Fraley was not given any time off without pay, was not disciplined, was not reprimanded, was not instructed to act in any different manner in the future, and was not instructed to participate in any additional training and/or education.  The City had plenty of evidence – more than sufficient to be presented to a grand jury – regarding Officer Fraley's actions.  Even so, after review of all such evidence, contrary to any reasonable analysis,

upon information and belief, the City chose to do nothing to Officer Fraley. Instead, upon information and belief, the Chief of Police assisted Officer Fraley in securing a new position with the Hutto Police Department.

41. Upon information and belief, Galveston Assistant Police Chief Byron Frankland became police chief of the Hutto, Texas Police Department after Toni was shot and killed but before Officer Fraley obtained a new position with the Hutto Police Department. Upon information and belief, Officer Fraley, who after killing Toni resigned from the Galveston Police Department, was able to secure a new position with the Hutto Police Department with the assistance of the City of Galveston Police Chief. This was further evidence of the City's ratification of Officer Fraley's conduct as being an expression of City policy, practice, and/or custom. Thus, such policy, practice, and/or custom was a moving force behind, and a proximate and producing cause of, Toni's death and all damages sought and/or referenced in this pleading.

### 2. The City's Policies, Practices, and Customs Regarding Off-Duty Officers Were Moving Forces Behind and Caused Toni's Death

42. The City of Galveston Police Department Policy Manual ("Manual") indicates that authority has been delegated to the Galveston Chief of Police to "create and maintain rules, regulations, and special orders to fulfil his role of providing direct supervision and control over the Police Department . . . ." Further, "It is pursuant to this authority that the Galveston Police Department has created its Manual." The Manual also reads that the Chief of Police shall review and approve revisions to the Manual.

43. Policy 206, included in the Manual, is entitled "Control Devices and Techniques." It indicates that control devices approved by the Galveston Police Department are:

- Baton and/or impact weapon (long, short, side-handle or expandable)

- Oleoresin Capsicum (OC) spray

- Chemical agents and their delivery systems

- Kinetic energy projectiles and their delivery systems

- TASER device

The Manual indicates that such control devices may be used by an officer when a decision has been made to restrain or arrest a subject who is violent or who demonstrates the intent to be violent, and when the use of such a device appears to be reasonable under the circumstances.

44.     The City does not authorize police officers to carry Taser devices while off-duty, unless a police officer is engaged in police-related outside employment.  Upon information and belief, the City also does not authorize police officers to carry any of the other "control devices" when off-duty and not engaged in police-related outside employment.  However, the City authorizes police officers to carry firearms while off-duty.  Thus, upon information and belief, the only use of force assistive-device which the City allows its police officers to carry when off-duty, and not engaged in police-related employment, is a firearm.  Therefore, even though Officer Fraley did not need to use any assaultive-type force with Toni, when deciding to do so regardless, the only assistive device allowed by the City, upon information and belief, for Officer Fraley to carry off-duty, and use, was a firearm.  Thus, he was presented only two ways in which to physically use the firearm – pistol-whipping someone and shooting someone.  In this case, he did both.  Thus, upon information and belief, the City's policies regarding off-duty officers were a moving force behind all claims and damages asserted in this pleading.

3. The City's Failure to Appropriately Train and/or Supervise Officer Fraley was a Moving Force Behind and Caused Toni's Death

45. Further, upon information and belief, the City of Galveston failed to appropriately train and/or supervise Officer Fraley as to how to handle off-duty situations. The City allowed Officer Fraley to, alone, address the situation occurring just before Officer Fraley shot Toni. The City should have better supervised Officer Fraley, by sending a uniformed police officer to the scene if in fact there was some incident requiring police assistance (which the Plaintiffs deny).

46. Moreover, in addition and in the alternative, upon information and belief, the City did not appropriately train Officer Fraley as to how to handle an off-duty situation such as that he encountered. Upon information and belief, the City also did not provide to Officer Fraley or any other officers de-escalation training and/or techniques. The City's failure to appropriately provide such training and/or supervise Officer Fraley were, upon information and belief, moving forces behind and proximate and producing causes of damages alleged in this pleading and Toni's untimely death.

III. Causes of Action

A. Cause of Action Against Evan Sumner Fraley Under 42 U.S.C. § 1983 for Violation of 4th and 14th Amendment Rights

47. In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all factual allegations above) to the extent they are not inconsistent with the cause of action pled here, Defendant Fraley is liable to the Plaintiffs and Toni's heirs at law, pursuant to 42 U.S.C. § 1983, for violating Toni's rights guaranteed by the Fourth Amendment alone, and/or in addition and/or in the alternative as the Fourth Amendment has been incorporated to be applied to the States pursuant to the Fourteenth Amendment. Officer

Fraley acted and failed to act under color of state law at all times referenced in this pleading. Officer Fraley was deliberately indifferent to Toni's constitutional rights, and he acted in an objectively unreasonable manner when seizing and using force with Toni. He exercised constitutionally impermissible excessive force and seizure. Officer Fraley violated clearly established constitutional rights, and his conduct was objectively unreasonable in light of clearly established law at the time of the relevant incident.

48.     It was clearly-established law, in the Fifth Circuit, at the time Officer Fraley chose to assault and shoot and kill Toni, that an officer cannot physically assault with his hands, or shoot with a firearm, a person who is not resisting arrest, is not fleeing, is not suspected of a serious crime, and who is not a risk of serious injury to the officers or others. Further, it was at the time clearly-established law in the Fifth Circuit that a law enforcement officer's use of force is excessive when an officer strikes, punches, or violently slams a suspect who is not resisting arrest. Use of a firearm is force well beyond striking or punching a person not resisting arrest and would thus be unconstitutional excessive force and seizure.

49.     It should be undisputed that there is absolutely no factor or fact which cuts in favor of Officer Fraley's chosen use of force in this case. His use of force was objectively unreasonable, unconstitutional, and against clearly-established law. There were also no exigent circumstances allowing Officer Fraley to use the force which he chose to use. Therefore, Officer Fraley is not entitled to qualified immunity.

50.     The United States Court of Appeals for the Fifth Circuit has held that using a state's wrongful death and survival statutes creates an effective remedy for civil rights claims pursuant to 42 U.S.C. § 1983. Therefore, the heirs-at-law, including Mr. Collins and Toni's siblings, and the Estate of Toni Jo Collins, seek all remedies and damages available under Texas and federal law,

including but not necessarily limited to the Texas wrongful death statute (Tex. Civ. Prac. & Rem. Code § 71.002 *et seq.*), the Texas survival statute (Tex. Civ. Prac. & Rem. Code § 71.021), the Texas Constitution, common law, and all related and/or supporting case law.  Therefore, Toni's estate and/or her heirs at law suffered the following damages, for which they seek recovery from this natural person Defendant:

- Toni's conscious physical pain, suffering, and mental anguish;

- Toni's medical expenses;

- Toni's funeral expenses;  and

- exemplary/punitive damages.

51.    All such damages were caused and/or proximately caused by the natural person Defendant.  If Toni had lived, she would have been entitled to bring a 42 U.S.C. § 1983 action and obtain remedies and damages provided by Texas and federal law.

52.    Mr. Collins also seeks all damages available to him individually as a result of Toni's wrongful death. Mr. Collins was Toni's legal and biological father.  Like all other damages alleged in this section of this pleading, damages suffered by Mr. Collins were caused and/or proximately caused by the natural person Defendant. Therefore, Mr. Collins seeks and is entitled to obtain all remedies and damages available to him for the 42 U.S.C. § 1983 claims.  The natural person Defendant's actions caused, were proximate causes of, and/or were producing causes of the following damages suffered by Mr. Collins, for which he individually seeks compensation:

- loss of services that Mr. Collins would have received from his daughter, Toni;

- Toni's funeral expenses;

- past mental anguish and emotional distress suffered by him resulting from and caused by the death of Toni;

- future mental anguish and emotional distress suffered by him resulting from and caused

by the death of Toni;

- loss of companionship and society that he would have received from Toni; and

- exemplary/punitive damages.

53.     Exemplary/punitive damages are appropriate in this case to deter and punish clear and unabashed violation of Toni's constitutional rights.  The natural person Defendant's actions and/or inaction showed a reckless or callous disregard of, or indifference to, Toni's rights and safety.  In addition, all such damages resulted from the natural person Defendant choosing to proceed with conscious indifference to and disregard of the rights, safety, or welfare of Toni after having an actual subjective awareness of the risk involved but nevertheless proceeding with actions resulting in her injuries and death.  The natural person Defendant's actions, when viewed objectively from his standpoint at the time of the acts and/or omissions involved, resulted in an extreme degree of risk, considering the probability and magnitude of potential harm to Toni. Moreover, all Plaintiffs in this case seek from the natural person Defendant reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§ 1983 and 1988.

B.     Cause of Action Against City of Galveston Under 42 U.S.C. § 1983 for Violation of 4th and 14th Amendment Rights

54.     In the alternative, without waiving any of the other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all factual allegations above) to the extent they are not inconsistent with the cause of action pled here, Defendant City of Galveston is liable to the Plaintiffs, and Toni's heirs at law, including Mr. Collins and Toni's siblings, pursuant to 42 U.S.C. § 1983, for violating Toni's rights guaranteed by the Fourth Amendment alone, and/or in addition and/or in the alternative as the Fourth Amendment has been incorporated to apply to the States

pursuant to the Fourteenth Amendment. Officer Fraley was at all times referenced in this pleading acting in the course and scope of his duties of and for the City of Galveston, and he was acting under color of state law. The City acted or failed to act under color of state law at all relevant times.

55.     Upon information and belief, the City's customs, practices, and/or policies caused, were proximate causes of, and/or were producing causes of all damages referenced herein. The Galveston Chief of Police was the chief policymaker at all times relevant to this pleading, and he was the one that determined the customs, practices, and policies referenced herein, or the City's chief policymaker had delegated to the Galveston Chief of Police such chief policymaking authority. The chief policymaker's failure to adopt, upon information and belief, policies referenced in this pleading, as well as his failure to stop customs, practices, and policies which developed and which are mentioned in this pleading, were intentional choices. Thus, the City was deliberately indifferent to, and acted in an objectively unreasonably manner regarding, Toni's constitutional rights (as well as the rights of any others who suffered Fourth Amendment violations at the hands of Galveston police officers.) Upon information and belief, the City's customs, practices, and/or policies were moving forces behind the violation of Toni's rights and showed deliberate indifference to the known or obvious consequences of constitutional violations. They also, upon information and belief, caused, were proximate causes of, and were producing causes of all damages resulting from unconstitutional excessive force against and seizure of Toni.

56.     The United States Court of Appeals for the Fifth Circuit has held that using a state's wrongful death and survival statutes creates an effective remedy for civil rights claims pursuant to 42 U.S.C. § 1983. Therefore, the heirs-at-law, including Mr. Collins and Toni's siblings, and the Estate of Toni Jo Collins, seek all remedies and damages available under Texas and federal law,

including but not necessarily limited to the Texas wrongful death statute (Tex. Civ. Prac. & Rem. Code § 71.002 *et seq.*), the Texas survival statute (Tex. Civ. Prac. & Rem. Code § 71.021), the Texas Constitution, common law, and all related and/or supporting case law. Therefore, Toni's estate and/or her heirs at law suffered the following damages, for which they seek recovery from the City:

- Toni's conscious physical pain, suffering, and mental anguish;

- Toni's medical expenses; and

- Toni's funeral expenses.

All such damages were caused and/or proximately caused by the City. If Toni had lived, she would have been entitled to bring a 42 U.S.C. § 1983 action and obtain remedies and damages provided by Texas and federal law.

57.     Mr. Collins also, individually, seeks and is entitled to all remedies and damages available to him for the 42 U.S.C. § 1983 violations. Mr. Collins seeks those damages due to the wrongful death of his biological and legal daughter. All damages suffered by the heirs-at-law, including Mr. Collins, were caused and/or proximately caused by the City, and the City's policies, practices, and/or customs were moving forces behind such damages. Therefore, the City's actions, policies, practices, and customs caused, were proximate causes of, were producing causes of, and were moving forces behind the following damages suffered by Mr. Collins, for which he individually seeks compensation:

- loss of services that Mr. Collins would have received from his daughter, Toni;

- Toni's funeral expenses;

- past mental anguish and emotional distress suffered by him resulting from and caused by the death of Toni;

- future mental anguish and emotional distress suffered by him resulting from and caused

by the death of Toni; and

- loss of companionship and society that he would have received from Toni.

Moreover, all Plaintiffs in this case seek from the City reasonable and necessary attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## IV.    Concluding Allegations

### A.    Conditions Precedent

58.    All conditions precedent to assertion of the Plaintiffs' claims have occurred.

### B.    Use of Documents

59.    The Plaintiffs intend to use at one or more pretrial proceedings, in motion practice, and/or at trial all documents produced by the Defendants in this case in response to written discovery requests.

### C.    Jury Demand

60.    The Plaintiffs demand a jury trial on all issues which may be tried to a jury.

### D.    Prayer

61.    For these reasons, the Plaintiffs ask that the Defendants be cited to appear and answer, and that the Plaintiffs (and Toni's heirs at law, including Mr. Collins and Toni's siblings) have judgment for damages within the jurisdictional limits of the court and against all Defendants, jointly and severally, as legally applicable, for:

  a)    actual damages of and for Bobby Jack Collins individually including but not necessarily limited to the following:

  - loss of services that he would have received from his daughter, Toni;

- Toni's funeral expenses;

- past mental anguish and emotional distress resulting from and caused by the death of Toni;

- future mental anguish and emotional distress resulting from and caused by the death of Toni; and

- loss of companionship and society that he would have received from Toni;

b) actual damages of and for the Estate of Toni Jo Collins through its Independent Administrator Leisa Collins (ultimately the heirs-at-law of Toni, including Bobby Jack Collins and Toni's siblings) including but not necessarily limited to the following:

- Toni's conscious physical pain, suffering, and mental anguish;

- Toni's medical expenses; and

- Toni's funeral expenses;

c) exemplary/punitive damages for all Plaintiffs (including all heirs at law of Toni, including Mr. Collins and Toni's siblings) from the natural person Defendant;

d) reasonable and necessary attorneys' fees for all Plaintiffs (including all heirs at law of Toni, including Mr. Collins and Toni's siblings) through trial and any appeals and other appellate proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988;

e) court costs and all other recoverable costs;

f) prejudgment and postjudgment interest at the highest allowable rates;  and

g) all other relief, legal and equitable, general and special, to which the Plaintiffs (and all heirs at law) are entitled.

Respectfully submitted,


_____/s/ T. Dean Malone_____
T. Dean Malone
Attorney-in-charge
Texas State Bar No. 24003265
Southern District of Texas Bar No. 37893
Law Offices of Dean Malone, P.C.
900 Jackson Street
Suite 730
Dallas, Texas 75202
Telephone:    (214) 670-9989
Telefax:            (214) 670-9904
dean@deanmalone.com

Of Counsel:

Michael T. O'Connor
Texas State Bar No. 24032922
Southern District of Texas Bar No. 37991
Law Offices of Dean Malone, P.C.
900 Jackson Street
Suite 730
Dallas, Texas 75202
Telephone:     (214) 670-9989
Telefax:          (214) 670-9904
michael.oconnor@deanmalone.com